United States District Court
Southern District of Texas
**FILED**

**JAN 2 1 2016**

. **Clerk of Court**

United States District Court
Southern District of Texas

**ENTERED**

January 25, 2016

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| ROGELIO CRUZ | § | |
| Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. M-14-780 |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| Defendant | § | |

## REPORT & RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) on September 1, 2014.   (Dkt.

Entry No. 1.)   The case was referred to the undersigned for report and recommendation

pursuant to 28 U.S.C. § 636(b).   Pending before the Court are the parties' motions for summary

judgment and briefs in support.   (*See* Dkt. Entry Nos. 9–10.)   This case is ripe for disposition

on the record.

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully

recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 10) be **DENIED**,

Defendant's Motion for Summary Judgment (Dkt. Entry No. 9) be **GRANTED**, the

Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

## I.   BACKGROUND

Plaintiff filed for disability insurance and supplemental security income benefits in April

2007, alleging a disability onset date of February 6, 2006.   (Dkt. Entry No. 11 at 1.)

Plaintiff's application was denied initially and upon reconsideration.   (*Id.*)   An administrative

Law Judge ("ALJ") issued an unfavorable opinion denying benefits in January 2009.   (*Id.*)

1

Plaintiff prevailed before the Appeals Council, and his case was remanded for another hearing, which was subsequently followed by an unfavorable decision by ALJ Malloy in 2010.   (*Id.*) Plaintiff again prevailed before the Appeals Council because the hearing transcript was deemed incomplete due to the number of "inaudibles" peppering the hearing transcript.   (*Id.*)

A third hearing was held in May 2013, and ALJ Schwarz issued an unfavorable decision on June 5, 2013.   (*Id.* at 2.)   The Appeals Council denied Plaintiff's request for review.   (*Id.*) This federal action followed.   It is the denial of benefits by ALJ Schwarz in 2013 that constitutes the Commissioner's "final decision" for the purposes of this federal civil action.

Plaintiff states that he is considered a person "closely approaching advanced age" (50 years of age and above), and he has only an eighth grade education.   (*Id.*)   Plaintiff states that his past relevant work was exertional medium and ranged from unskilled to semi-skilled.   (*Id.*)

Plaintiff alleged that he was disabled based on a host of impairments, including morbid obesity, hypertension, osteoarthritis, bilateral hand numbness and pain, and status post laminectomy and chronic lumbar pain with extremity radiculopathy.   (R. 21.)

## II.   STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support of his claim and enter judgment only on the basis of the pleadings and transcript of the record, summary judgment is an acceptable device in cases seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) of the Act.   *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985);   *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).   However, this Court's review of the Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence;   and (2) whether there is substantial evidence in the record as a whole

to support the decision that the claimant is not disabled as defined by the Act.   *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.   *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).   It is more than a scintilla, but less than a preponderance.   *Id*.   If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed.   *Brown*, 192 F.3d at 496.   Under this standard of review, this Court must carefully scrutinize the record to determine if such evidence is present.   *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision."   *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Johnson*, 864 F.2d at 343).   This Court's judicial review is deferential to the Commissioner's decision, but without being so obsequious that it renders the review meaningless.   *Id*.

Although the reviewing court does not reweigh the evidence or try the issues *de novo*, the court does analyze or evaluate the evidence to determine whether substantial evidence exists, *e.g.*, *Leggett*, 67 F.3d at 564 (explaining that substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion), and to determine whether any errors are harmful or prejudicial for the purposes of a remand, *see, e.g., Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) ("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision)*; Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)

3

(explaining that, where an ALJ fails to fairly develop the record and facts, the claimant must show prejudice by demonstrating that, had the ALJ developed the record fairly, the ALJ could and would have adduced evidence that might have altered the result).

## III.   ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act.   42 U.S.C. § 423 (d)(1)(A);   *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983).   The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).   The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   A sequential five-step approach is used to determine whether the claimant qualifies as disabled.   *See* 20 C.F.R. § 404.1520(a)(4).   The claimant bears the burden of proving the first four steps to show that:   (1) he is not presently engaged in substantial gainful activity;   (2) he has a severe impairment;   (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations;   and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work.   *Leggett*, 67 F.3d at 564 n.2.   Once the claimant proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy.   *Greenspan*, 38 F.3d at 236–37.   The burden then shifts back to the claimant to rebut this finding.   *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).   A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry.   *Leggett*, 67 F.3d at 564.

4

In this case, the ALJ made the following findings:   (1) although Plaintiff worked after the alleged onset disability date, he has not engaged in substantial gainful activity since the alleged onset  (R. 20–21);   (2) Plaintiff's obesity, hypertension, osteoarthritis, bilateral hand numbness and pain, and status post laminectomy and chronic lumbar pain with extremity radiculopathy are severe impairments (R. 21);   (3) however, the medically determinable severe impairments do not meet or medically equal one of the impairments listed in the appendix to the regulations (R. 21);   (4) he retains the residual functional capacity ("RFC") to perform the full range of medium work   (R. 22), and relying on the testimony of a vocational expert, Plaintiff is capable of performing past relevant work as an off-road truck driver and cotton ginning helper (R. 22–32).  The ALJ then found that Plaintiff had not been under a disability from February 6, 2006, through the date of the decision.   (R. 32.)

## IV.   APPLICABLE LAW & ANALYSIS

The undersigned does not summarize the entirety of the administrative proceeding and record.  Rather, the undersigned addresses only the issues or evidence disputed by the parties. Plaintiff raises three issues in this case.

### A.   Reliance on the 2010 Hearing Testimony and 2010 Credibility Finding

Plaintiff argues that ALJ Schwarz committed legal error and infringed upon Plaintiff's due process rights by incorporating excerpts from ALJ Malloy's 2010 decision—specifically, a summary of Plaintiff's testimony from the 2010 hearing—into his own 2013 decision and relying upon the adverse credibility determinations by ALJ Malloy, when the transcript from the 2010 hearing is not in the current record.  According to Plaintiff, any testimony from the 2010 hearing constitutes "extra record evidence," and ALJ Schwarz was not permitted to rely on it under the

regulations and pursuant to due process.   Plaintiff argues that there is no dispute ALJ Schwarz relied on the 2010 decision because he says so expressly in his 2013 decision.

Defendant argues that Plaintiff overstates the error and that there is no indication that the inclusion of certain findings or evidence from the 2010 decision influenced the outcome in 2013. Further, Defendant contends that there is substantial evidence supporting the 2013 decision and adverse findings.   Finally, Defendant argues that even if the ALJ erred, Plaintiff fails to show prejudice or harm.   Defendant argues that the remedy in this case likely would not be another hearing, but a redaction of the offending portions of the 2013 decision.   Under those circumstances, Defendant argues, nothing calls into question the substantiality of the evidence, and there is no indication that the outcome would be any different, if the case was remanded back to the administrative level.

In his reply, Plaintiff argues it is "Kafka-esque" for Defendant to characterize the error as a mere technicality, accuses Defendant of misleading the Court, and, based upon "information and belief," accuses the ALJs of the "intentional and purposeful misrepresentation of [Plaintiff's] testimony" from the 2010 hearing, noting that Plaintiff cannot actually prove this because the 2010 transcript is not in the record.   (*See* Dkt. Entry No. 16 at 1–3.)   Addressing Defendant's position that any error was harmless, Plaintiff asserts that it "was not harmless error to purposefully misrepresent a claimant's testimony and then cheat the system by denying the claimant the right to review that testimony and disprove the Agency's misrepresentations."   (*Id.* at 3.)

The undersigned begins by describing ALJ Schwarz's written decision, which reflects the following.   As ALJ Schwarz progressed through the sequential analysis, he evaluated Plaintiff's subjective complaints and symptoms under the Agency's two-step inquiry.   After setting forth the

applicable law, ALJ Schwarz wrote that "[t]he undersigned reviewed and considered claimant's testimony from the previous hearing dated May 29, 2010, and now incorporates that testimony into the record as noted below." (R. 22.) He then includes an expert from ALJ Malloy's 2010 decision which summarizes Plaintiff's testimony about his educational background, reading and writing abilities, his work history, his height, weight, and age, the type of work he used to do, and the nature of his symptoms, including dizziness, numbness, and back pain.[1] (R. 22.) That excerpt is followed by ALJ Schwarz's summary of Plaintiff's testimony at the 2013 hearing, during which Plaintiff described his symptoms, including pain, and limitations to ALJ Schwarz, as well as a summary of the medical expert's testimony from the 2013 hearing. (R. 23.) This was done at the point where the ALJ Schwarz was making the RFC determination.

---

[1]   The 2010 written decision by ALJ Malloy is in the current record. (R. 140–151.) Only the 2010 hearing transcript is missing.

Next, ALJ Schwarz included an excerpt, totaling about 7 pages, from ALJ Malloy's written decision in 2010, wherein ALJ Malloy summarized and analyzed the record evidence, such as the medical records, which also included reference to Plaintiff's testimony.   (R. 23–29.)   In doing so, ALJ Schwarz concluded that the "Appeals Council in its remand order did not take issue with the analysis of the medical evidence from the hearing dated May 28, 2010." (R. 23.)   The excerpt ALJ Schwarz used just so happened to include a paragraph that contained ALJ's Malloy's description of Plaintiff's testimony as "evasive," as well as ALJ Malloy's adverse credibility finding that Plaintiff's alleged symptoms and limitations were not credible to the extent they were not consistent with the medical evidence.   (R. 28–29.)

No one disputes that due process issues may arise in Social Security disability administrative proceedings and that certain protections are afforded.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tanner v. Sec'y of Health and Human Servs*, 932 F.2d 1110, 1112 (5th Cir. 1991) ("We have previously held that benefits claimants enjoy due process guarantees . . . ."). However, Plaintiff's due process claim is conclusory.   He fails to cite to any meaningful legal authority for his contention that he has a due process right under the circumstances of his claim or that it is a due process violation—under the facts of a case—for ALJ Schwarz to include in the written decision excerpts from a prior ALJ's written decision in denying social security disability benefits to Plaintiff, who has never been awarded benefits in the first place, when the decisions are part of the progression of the same application and period of disability, and the final decision followed a new evidentiary hearing and independent evaluation of the evidence by the ALJ. Plaintiff fails to cite to any meaningful authority to demonstrate that ALJ Schwarz failed to comply with the proper legal standards by doing this.   The primary legal authority Plaintiff relies on—and

8

he does so indirectly with "see" signals—are 20 C.F.R. § 416.1453 (providing that an ALJ's decision must be based solely on the "evidence offered at the hearing or otherwise included in the record"), and 42 U.S.C. § 405(b)(1) (providing that SSA adjudicators must issue their decisions based upon the "evidence adduced at the hearing").   The undersigned has researched those authorities and finds that this statute and regulation add little meaningful, direct support for Plaintiff's claim of reversible error in this case.   Similarly, although Plaintiff argues that ALJ Schwarz impermissibly relied on "extra record evidence," Plaintiff does not explain how the missing 2010 transcript (or Plaintiff's own testimony from that hearing) amounts to "extra record evidence."   Plaintiff merely labels it as such.

Relevant statutes, policies, and regulations make it clear that an applicant's prior statements and testimony can play a part in the sequential process at the hearing level.   *Cf.*   42 U.S.C. § 405(b)(1) ("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure."); C.F.R. § 404.1512(b)(1)(3) (explaining that "[e]vidence is anything you or anyone else submits to us or that we obtain that relates to your claim," and it includes "[s]tatements you or others make about your impairment(s), your restrictions, your daily activities, your efforts to work, or any other statements you make to medical sources during the course of examination or treatment, or to us during interviews, on applications, in letters, and in testimony in our administrative proceedings.");   Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 FR 34483-01 ("SSR 96-7p") (explaining that, in evaluating the claimant's credibility, "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record,"

9

instructing that the adjudicators may consider and weigh, as appropriate, the consistency of the individual's own statements based on the record with the SSA (and statements to other agencies), and cautioning the adjudicator that inconsistencies may be the result of a deteriorating condition, not simply a lack of credibility on the part of the claimant).

Although Plaintiff complains about not having the opportunity to challenge ALJ Malloy's characterization of Plaintiff's testimony (in terms of the excerpt included in the 2013 decision), he fails to explain why due process mandates that he be given an additional or greater opportunity to challenge the substance of ALJ Malloy's findings and assessment of the evidence from the 2010 proceeding than he was already given. He already exercised his opportunity to challenge ALJ Malloy's findings and characterization of the evidence in 2010 by seeking administrative review of ALJ Malloy's decision, and, when the case was remanded due to the "inaudibles" in the hearing transcript, Plaintiff was given the opportunity to present evidence and testify at the new hearing in 2013 before ALJ Schwarz. A review of the 2013 hearing transcript reflects that Plaintiff's attorney conducted the entire "examination" of Plaintiff (*see* R. 89–110), and the ALJ hardly spoke, except to get clarification about an answer Plaintiff gave which the ALJ felt was "ambiguous" (*see* R. 90–91). In that sense, Plaintiff, through counsel, had a nearly unfettered ability to testify in support of his claim at the 2013 hearing or to round out the evidentiary record (*e.g.*, to strategically address any perceived weaknesses in his case). ALJ Schwarz independently reviewed the evidence and 2013 testimony in his written decision. Plaintiff then had the opportunity to seek review of ALJ Schwarz's 2013 decision by the Appeals Council. Notably, Plaintiff does not explain when the 2010 transcript went missing, nor does he claim that he has never had access to or the opportunity to obtain a copy of the transcript.

10

The undersigned finds that Plaintiff's claim of a due process violation is too conclusory to merit the relief sought.   The claim is unsupported by persuasive legal authority, and it seems to be predicated on rhetorical flourish instead.   Additionally, the undersigned is not persuaded that the factual circumstances complained of amount to a due process violation warranting a remand, *cf. Mathews v. Eldridge*, 424 U.S. 319, 334 ("Due process is flexible and calls for such procedural protections as the particular situation demands."), or amount to reversible error, *e.g.,* 20 C.F.R. § 404.951 (explaining that an administrative law judge shall make a complete record of the hearing proceeding). No matter how the claim is couched, however, the common feature shared by all of Plaintiff's complaints is the absence of harm or prejudice to justify a remand.   In reaching these conclusions, it is helpful to untangle and address some of the sub-arguments Plaintiff asserts in this claim.

The first dimension of Plaintiff's argument is that ALJ Schwarz erred by referencing Plaintiff's testimony from the 2010 hearing when the 2010 transcript is not included in the current record, at least the one provided in this Court.   The undersigned finds that this claim is best described as a claim about an incomplete record.   An incomplete record may involve the record before the district court on judicial review, *see Brady v. Apfel*, 41 F. Supp. 2d 659, 668 (E.D. Tex. 1999) (involving a partially incomplete administrative record before the district court), and it can also involve an incomplete record before the ALJ as well, *see Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995) ("Only the tape recording of the hearing was lost. The ALJ had the full benefit of all of the exhibits from the previous hearing, as well as new exhibits and testimony from the Appellant. In this case, Appellant has not demonstrated that loss of the recording affected the ability of the ALJ to render an informed decision, and no violation of due process has been proven.").

Either way, however, a partially incomplete record, like the one in this instant case, is not a per se due process violation or legal error that automatically requires a remand. *See, e.g., Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir. 1981) (explaining that there must be a showing of substantial prejudice in order to prove a denial of due process in an administrative proceeding); *Brady*, 41 F. Supp. 2d at 668 (concluding that a partially incomplete administrative record before the district is not a per se violation of due process); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."); *see also Hayes v. Astrue*, H-09-3443, 2012 WL 2994248, at *19 (S.D. Tex. July 20, 2012) (unpublished) (applying *Ka Fung Chan v. INS* in a social security disability appeal); *Adams v. Astrue*, 2009 WL 774845, at *4 (W.D. La. Mar. 24, 2009) (unpublished) (applying *Ka Fung Chan v. INS* in a social security disability appeal).

One of the leading published cases on this topic in this circuit is *Brady v. Apfel*, 41 F. Supp. 2d 659 (E.D. Tex. 1999), wherein the district court concluded that a partially incomplete administrative record is not a per se violation of due process. "Instead, the touchstone is whether the administrative record that does exist permits meaningful judicial review." *Id.* (relying on *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 594 (1980), for the proposition that a reviewing court may remand if it unable to exercise informed judicial review because of inadequate administrative record, and *Torres v. Shalala*, 48 F.3d 887 (5th Cir.1995), for the proposition that a remand need not be ordered when evidence is missing but there is still ample evidence from which a determination may be made); *see also Rodriguez v. Shalala*, No. 93-8712, 1994 WL 499764, at *5–6 (5th Cir. 1994) (unpublished) (rejecting the claim that the ALJ's reference to the transcript in a prior hearing, without first providing the claimant with a copy of this transcript, violated the

12

claimant's constitutional right to due process). Many district courts have reached similar conclusions. *See Young v. Colvin*, 2014 WL 4851565, at *33 (N.D. Tex. 2014) (explaining that trial courts should not reverse or remand simply because documents are missing when the record contains enough evidence for the ALJ to make a determination); *Quintanilla v. Astrue*, 619 F. Supp. 2d 306, 325 (S.D. Tex. 2008) (same or similar).

Under the reasoning of the preceding case law, the undersigned concludes that the record permits adequate judicial review because the record shows that ALJ Schwarz made his own independent findings about Plaintiff's credibility after independently discussing and weighing the evidence, including, but not limited to, Plaintiff's testimony from the 2013 hearing and the medical evidence Plaintiff submitted after the remand. The undersigned is aware that the act of including excerpts from the 2010 decision in the 2013 decision resulted in ALJ's Malloy's characterization of Plaintiff's testimony as "evasive" and ALJ Malloy's credibility finding being included in the 2013 decision. At the same time, the undersigned points out that judicial review is not an exercise in grading how well an ALJ's decision is written and composed. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that bare conclusions are sometimes beyond meaningful judicial review but also acknowledging that an ALJ is not required to do an exhaustive point-by-point discussion of the evidence).

Plaintiff's argument hinges on his claim that, not only did ALJ Schwarz admit that "he considered Plaintiff's testimony from the May 29, 2010 hearing," but ALJ Schwarz "goes on to endorse" and "affirmatively adopt" ALJ Malloy's reasoning that Plaintiff's testimony was evasive and warranted an adverse credibility finding. (Dkt. Entry No. 11 at 3; No. 16 at 2.) The undersigned has thoroughly reviewed the 2013 decision by ALJ Schwarz, as well as the specific page numbers Plaintiff cites in support of his claim that the ALJ adopted and endorsed the prior

13

ALJ's credibility findings.   The undersigned finds that Plaintiff's argument turns on an attenuated reading of the written decision and that Plaintiff overstates the nature and scope of the alleged error—both in his summary judgment brief and his reply.   The undersigned sees no indication that ALJ Schwarz affirmatively adopted ALJ Malloy's substantive findings, such as the credibility finding, in the manner urged by Plaintiff, let alone relied on them to any material, prejudicial, or harmful degree.

Although the credibility finding is an important component to the disposition of a disability claim, this case does not involve a failure to provide one, nor did ALJ Schwarz fail to independently evaluate Plaintiff's symptoms under the proper legal standards.   Moreover, notwithstanding ALJ Schwarz's inclusion of an excerpt from ALJ Malloy's decision, ALJ Schwarz made his own independent credibility and symptomology findings following the new hearing in 2013, which also included his review of medical records submitted by Plaintiff after the remand. ALJ Schwarz's findings about Plaintiff's credibility and symptoms are based *expressly* on the lack of objective clinical evidence and consistent medical evidence supporting Plaintiff's alleged symptoms and limitations.   (R. 23; 30–31.)   *See, e.g.*, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("Subjective complaints of pain must . . . be corroborated by objective medical evidence.");   *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (explaining that when an ALJ evaluates subjects complaints of pain and other symptoms, "subjective evidence need not be credited over conflicting medical evidence").   ALJ Schwarz's written findings do not state that he, ALJ Schwarz, thought Plaintiff was evasive, and his written findings include no express reference or direct connection to ALJ Malloy's findings.   Even *if*, after hearing Plaintiff's testimony at 2013 hearing, ALJ Schwarz believed in his mind—or concurred with ALJ Malloy's assessment—that

14

Plaintiff was an evasive witness, those possibilities alone—or a failure to clearly document that impression in his decision—do not constitute reversible error in this case *precisely because* ALJ Schwarz explained his findings and reasoning in an otherwise sufficient, clear manner in the written decision. *Cf. Audler*, 501 F.3d at 448 (explaining that bare conclusions are sometimes beyond meaningful judicial review but also acknowledging that an ALJ is not required to do an exhaustive point-by-point discussion of the evidence).

Although Plaintiff argues that ALJ Malloy's description of Plaintiff's testimony was wrong, even amounts to a "misrepresentation" of his testimony, Plaintiff makes no effort to explain how ALJ Malloy's description of his testimony, as incorporated into ALJ Schwarz's decision, was inaccurate. Instead, he chooses to argue that he cannot point to the errors because the transcript is missing. The undersigned finds this argument disingenuous. The summary of Plaintiff's testimony by ALJ Malloy, which was then included in the 2013 written decision by ALJ Schwarz, concerned Plaintiff's own symptoms, limitations, personal characteristics, and background. If the ALJ misstated these basic matters in the written decision, Plaintiff is in one of the best positions on judicial review to *try* to explain what portions of his testimony were not accurately captured (for example, such as whether his testimony about his height, weight, work background, and alleged symptoms and limitations was not accurately described). Moreover, Plaintiff has been represented by licensed counsel throughout the course of his proceedings, and he does not claim that he has *never* had access to or the opportunity to obtain the 2010 transcript. Plaintiff's actual concern seems less about the content of his testimony, as described by ALJ Malloy, than it is about his conclusion that Plaintiff was "evasive." In Plaintiff's reply brief, he imputes the misrepresentation to ALJ Schwarz and makes inflammatory assertions that the characterization of his testimony at the 2010 hearing as "evasive" amounts to "an intentional and purposeful

15

misrepresentation of that testimony" and a "lie." (Dkt. Entry No. 16 at 2–3.)   Plaintiff's inflammatory allegations are conclusory.   Either way, Plaintiff fails to convince the undersigned that, because the transcript is missing, he has no way *whatsoever* of explaining or addressing why he considers any of it to be inaccurate or misrepresented, and he generally fails to show that the alleged inaccuracies contribute directly or indirectly to the issue of prejudice or harm or his ability to demonstrate either.   *See, e.g., Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (observing that the claimant could not show prejudice because, in part, there was no indication that the ALJ relied significantly or at all on the medical expert's mischaracterization of favorable evidence, and the record showed that the ALJ's findings were based on reasoning independent of the medical expert's testimony); *Mays*, 837 F.2d at 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").   The undersigned observes also that Plaintiff's assumption that the 2010 transcript would affirmatively enable him to challenge ALJ's Malloy's observation that Plaintiff's testimony was evasive is not entirely sound.   That was ALJ Malloy's impression or observation, and it is not easily challenged factually or legally by simple reference to Plaintiff's testimony in the 2010 transcript (if it were in the record).   Most importantly, however, whether or not Plaintiff was "evasive" has little bearing on or relevance to ALJ Schwarz's dispositive, express finding that Plaintiff's alleged symptoms and limitations were not consistent with or supported by the medical evidence. *See Carey*, 230 F.3d at 143 (observing that the claimant could not show prejudice because, in part, there was no indication that the ALJ relied significantly or at all on the medical expert's mischaracterization of favorable evidence, and the

record showed that the ALJ's findings were based on reasoning independent of the medical expert's testimony).

Plaintiff also complains that "ALJ Schwarz's consideration of the 2010 hearing testimony violated the Appeals Council's remand order, which had provided that this evidence could not be considered because the hearing testimony had too many inaudibles, rendering the hearing record incomplete." (Dkt. Entry No. 11 at 4.)   Again, this is a complaint that requires some showing of harm or prejudice to justify a remand.   For the reasons explained in this Report, Plaintiff is unable to demonstrate that.

Plaintiff fails to show any prejudice or harm associated with the complained of errors, which dooms his claim—whether it is couched as a due process claim or as an issue of legal error. *See Ka Fung Chan*, 634 F.2d at 258 (explaining that there must be a showing of substantial prejudice in order to prove a denial of due process in an administrative proceeding);   *Newton*, 209 F.3d at 459 (stating that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required," but also explaining that prejudice must result from the violation to justify a remand); *Mays*, 837 F.2d at 1364 ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."); *Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996) (explaining that the plaintiff must show prejudice even when the claim is predicated on the ALJ's failure to provide adequate notice of the statutory right to counsel);   *Morris*, 864 F.2d at 335 ("[P]rocedural improprieties . . .will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.").   Plaintiff does not allege any particular

harm or prejudice, even in response to Defendant's invocation of the matter. *See Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error."); *see also Morgan v. Colvin*, 803 F.3d 773, 777–78 (5th Cir. 2015) (involving a case where the ALJ made an adverse credibility finding without holding a hearing or seeing the claimant in person, in contravention of the Agency's policy manual [HALLEX], and concluding that the claimant was able to demonstrate prejudice because the credibility assessment of the claimant's level of pain was essential to the sequential analysis and the ALJ's decision). Plaintiff merely provides a description of the errors themselves, accompanied by conclusory platitudes about fairness, justice, and due process. (*See* Dkt. Entry No. 16 at 2–3.) That is not sufficient. *Cf. Jones*, 691 F.3d at 735 (indicating that mere allegations of harm resulting from legal errors are insufficient to demonstrate that a remand is warranted). The undersigned also points out that, because Schwarz made his own independent credibility/symptomology findings based on the record evidence, which included Plaintiff's testimony from the 2013 hearing, and because there is ample evidence to support the findings, Plaintiff is unable to show any likelihood that the outcome would be any different on remand, which weighs against a remand and in favor of the conclusion that any error was harmless. *See Mays*, 837 F.2d at 1364 (explaining that "the major policy underlying the harmless error rule is to preserve judgments and avoid waste of time," and concluding that "[r]emanding this case for a third time would produce the same result while wasting time and resources"); *cf. Ortiz-Salas v. I.N.S.*, 992 F.2d 105, 106 (7th Cir. 1993) ("A litigant who seeks reversal on the ground of a denial of due process that is due to an inaccurate or incomplete transcript is therefore required to make the best feasible showing he can that a complete and accurate transcript would have changed the outcome of the case."). Although Plaintiff appears to seek a remand for a full do-over at the

administrative level, any further statements or testimony by Plaintiff about his subjective symptoms and alleged limitations would in all likelihood be the same or substantially similar to what he has stated in writing to the Agency over the years as part of application process, to what he has testified about at three different hearings, and to what was captured in summaries of his testimony by two different ALJs in a total of three written decisions.   This also exemplifies why a remand is not appropriate in this case.   *Cf. Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995) ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."); *Mays*, 837 F.2d at 1364 ("This court will not vacate a judgment unless the substantial rights of a party have been affected.").   In summary, the complained of errors as a whole—that is, the missing transcript from 2010, ALJ Schwarz's alleged reliance on the 2010 credibility assessment/findings, and ALJ's Schwarz's inclusion of ALJ Malloy's summary of Plaintiff's testimony from 2010—do not justify a remand on the basis of due process or on the basis that the ALJ committed legal error for the purposes of section 405(g).

Finally, ALJ Schwarz's findings are supported by substantial evidence in their own right. As Defendant correctly points out, ALJ Schwarz made and documented his own independent findings about Plaintiff's subjective complaints and symptoms, and there is more than substantial evidence—without ALJ Malloy's 2010 description that Plaintiff was evasive at the 2010 hearing or his finding that Plaintiff was not credible—to support ALJ Schwarz's decision to deny benefits, as well as to support his conclusion that Plaintiff's subjective symptomology was not as severe as Plaintiff described.   That evidence includes the dearth of objective medical evidence supporting or corroborating Plaintiff's allegations of debilitating pain, extreme numbness and tingling, and other symptoms, such as dropping things, falling down, chronic headaches, and a limited ability to

walk.   The ALJ expressly concluded that the evidence submitted after the remand did not substantiate Movant's alleged pain, limitations, and symptoms.   (R. 29.)   The ALJ noted that the emergency room records from September 2009 revealed a normal musculoskeletal system, no joint swelling or tenderness, no back pain, no extremity pain, and no neck pain.   (R. 30.)   As for the complaints of chronic headaches, a computerized tomography (CT) scan of the brain revealed no evidence of acute intracranial pathology.   (*Id.*)   On February 22, 2011, Plaintiff underwent a consultative examination by Dionisio Calvo, III, M.D., and his report reflects normal results for the most part, as follows:   normal gait, intact motor function, normal sensory function, normal muscle tone and strength in all extremities, normal neck and spine inspection, normal coordination, and intact cranial nerves;   no neurological abnormalities, no loss of dexterity, no disorganized motor function, and no abnormalities of the extremities; and, the ability to sit and stand, move about, lift, carry, handle objects, dress and undress, and transfer from the examining table and chair. (*Id.*)   Dr. Calvo also noted that, despite aches and pains, there was no evidence of contracture deformities, fasciculations, atrophy, or radiculopathy.   (*Id.*) The ALJ also pointed out that treatment records from June and July 2012 showed normal muscle strength in the upper and lower extremities, as well as a negative straight leg raising test and that Plaintiff requested that his back pain be treated conservatively.   (R. 30.)   Similarly, x-rays of the left shoulder and left elbow revealed only mild degenerative joint disease and x-rays of Plaintiff's left femur revealed no acute findings.   (R. 30.)   These are just some of the records documented and summarized in the ALJ's decision that demonstrate the substantiality of the evidence. (R. 23–31.)

Other evidence includes the testimony of the medical expert at the 2013 hearing, who explained in detail that the medical evidence was not consistent with the severity of the alleged impairments.     (R.   23.)     The   ALJ   also   relied   on   (1)   the   fact   that   Motrin   was   the

physician-recommended pain reliever for Plaintiff, even as late as 2013, (2) the general lack of medical treatment Plaintiff has had, despite his allegedly debilitating conditions, (3) the presence of only a conclusory evaluation from his treating physician, and (4) earnings records showing that Plaintiff actually worked at times after his alleged onset date of disability—all of which serve to support the ALJ's adverse findings and denial of benefits.

At the same time, the ALJ did not err when he evaluated Plaintiff's subjective complaints and symptomology. The record shows that ALJ's Schwarz followed the appropriate two-step inquiry, *Ripley v. Chater*, 67 F.3d at 556 (explaining the two-step legal standard for evaluating subjective complaints of pain and other symptoms); SSR 96-7p, 1996 WL 374186, at *1 (same). Also, ALJ Schwarz documented all of his findings after discussing the evidence. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (explaining that an ALJ must make affirmative credibility findings regarding a claimant's subjective complaints of pain or other symptoms); *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (per curiam) ("An ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain."). With that in mind, the undersigned observes that case law holds that an ALJ's assessment of the disabling nature of the claimant's pain is due considerable deference on judicial review. *Chambliss*, 269 F.3d at 522.

In conclusion, because this claim lacks merit and, more importantly, due to the absence of harm or prejudice, there is no basis for reversing or remanding this case pursuant to Plaintiff's first claim.

**B.     The Presence of "Inaudibles" in the 2013 Hearing Transcript**

For his second claim, Plaintiff argues the following:

> As noted above, the Appeals Council had to remand this case previously because the second hearing which occurred in May of 2010 was riddled with inaudibles (Tr. 162). Unbelievably, a similar problem has occurred with respect to the May 2013 hearing. The transcription of that hearing testimony includes 12 instances of inaudibles with no clear indication of any kind as to how long those inaudibles lasted (Tr. 90, 102, 110, 111, 115, 116). The third hearing which occurred in May of 2013 was conducted by video, just as the second hearing had been (Tr. 18, 87, 140). Yet despite a remand order stemming from the inaudibles at the 2010 hearing, SSA once again could not competently record this third hearing which is similarly beset by so many inaudibles (Tr. 90, 102, 110, 111, 115, 116). The Agency should have taken far greater care given the reason why this case had previously been remanded. Thus, even if the legal errors [under Claim 1] were ignored, remand would still be required due to the repeated inaudibles contained in SSA's transcription of the May of 2013 hearing.

(Dkt. Entry No. 11 at 5.)

Again, Plaintiff is complaining about a legal error or procedural impropriety, but he fails to allege, let alone, demonstrate harm or prejudice.   Relatedly, as already explained, an incomplete record is not a per se basis for a remand.   There is no indication—nor does Plaintiff argue—that the absence of some portions of the testimony from the 2013 transcript in any way impedes meaningful judicial review.   *Cf. Audler*, 501 F.3d at 448-49 (involving a conclusory finding at Step 3, which can render the record beyond meaningful review, but also requiring a showing of prejudice); *Torres*, 48 F.3d at 694 (concluding that a remand need not be ordered when evidence is missing but there is still ample evidence from which a determination may be made);   *Brady*, 41 F. Supp. 2d at 668 (explaining that the question is whether the administrative record that does exist permits meaningful judicial review); *see also Williams v. Barnhart*, 289 F.3d 556, 557–58 (8th Cir. 2002) ("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible

22

portions of the record.");   *McGlone v. Heckler*, 791 F.2d 1119, 1120 (4th Cir. 1986) ("Whether the transcript is inadequate depends upon the materiality of the omissions. The plaintiff shoulders the burden of showing that some material evidence was not reported or was so incompletely reported that its effect is obscured.").   After reviewing the 2013 transcript, it is clear that none of the 12 "inaudibles" inhibit review or comprehension of the contents of the transcript because the questions and answers were either (1) corrected at the moment through repetition of the question or answer or (2) the context sufficiently mitigates any possible ambiguity.   Moreover, the ALJ who presided at the hearing summarized the testimony of Plaintiff, the medical expert, and the vocational expert in the written decision, which helps to offset any harm or prejudice and also functions to facilitate meaningful judicial review.   (R. 23;   31–32.)   In sum, the 12 inaudibles do not impede meaningful judicial review, and Plaintiff fails to allege or demonstrate any associated harm or prejudice.

## C.    Failure to Account for Plaintiff's Bilateral Hand Numbness and Pain in the RFC

In his final claim, Plaintiff argues that, even though ALJ Schwarz explicitly found that Plaintiff suffers from severe bilateral hand numbness and pain, the ALJ's RFC finding included no reaching, handling, or fingering limitations whatsoever. (Dkt. Entry No. 11 at 6.)   Therefore, Plaintiff argues, these severe impairments were not accounted for when the RFC finding was formulated, and a remand is required so that the ALJ's RFC finding can adequately account for these severe impairments. (*Id.*)

If the sequential analysis proceeds past Step 3, the claimant's RFC is assessed.   *See* 20 C.F.R. § 404.1520(a); *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) ("The claimant's RFC is used at both steps four and five of the sequential analysis: at the fourth step to determine if the

claimant can still do his past relevant work, and at the fifth step to determine whether the claimant can adjust to any other type of work."). The RFC is an individual's ability to perform activities despite the limitations imposed by an impairment. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *See* 20 C.F.R. § 404.1545 (discussing the range of evidence that is evaluated when determining the RFC); *Elzy v. R.R. Ret. Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986) (similar). Social Security Ruling ("SSR") 96-8p states that the RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. 1996 WL 374184, at *1 (S.S.A. 1996). A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. *Id.* at *2. This inquiry requires the ALJ to determine whether, on a function-by-function basis, the claimant can perform all the strength demands of the particular category of work. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing SSR 96-8p,1996 WL 374184, at *2).

The undersigned agrees with Defendant's position. First, the ALJ properly accounted for bilateral hand numbness and pain by limiting Plaintiff's RFC to the full range of medium work, as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c). It is worth noting that, contrary to Plaintiff's suggestion, just because an impairment is deemed severe at Step 2 under *Stone v. Heckler*, it does not mean it is as functionally limiting as the claimant alleges for the purposes of later steps, *see, e.g., Anthony v. Sullivan*, 954 F.2d at 294 n.5 (explaining that the "*Stone*" severity threshold involves only a "de minimis" showing that the impairments are severe enough to interfere with the ability to do work), nor does it mean that the "severe" impairment is accorded extra special recognition when determining the RFC. There is no indication in the written decision that the

24

ALJ failed to take into consideration this severe impairment when determining the RFC.   In his written decision, the ALJ discussed Plaintiff's allegations regarding his hands and overall physical limitations, as well as all of the medical documentation and opinion evidence, throughout the sequential analysis and when evaluating Plaintiff's credibility and symptomology.   (*See* R. 21–30.)   Based on the evidence and the ALJ's related findings (*i.e.*, the weight to be given to opinion evidence and his adverse symptomology/credibility finding), the ALJ found that Plaintiff has a RFC for a full range of medium work.   *See* 20 C.F.R. § 404.1567(c) (defining medium work).   Second, Plaintiff does not identify in any of his briefs the precise limitations that are associated with his hand.   Plaintiff merely argues that there "is an inherent contradiction in the ALJ finding that Mr. Cruz suffers from severe bilateral hand numbness and pain and yet imposing no reaching, handling, or fingering restrictions of any kind."   (Dkt. Entry No. 11 at 6.)

Third, the medical evidence of record, including examinations and progress notes, as well as objective test results, support the ALJ's conclusion regarding reaching, handling, and fingering. As pointed out by Defendant, the emergency room records from September 2009 showed normal musculoskeletal system, no joint swelling or tenderness, and no extremity pain.   (R. 29.) Additionally, treatment records from June and July 2012 noted normal muscle strength in Plaintiff's upper extremities.   (R. 30.)   In February 2011, Dr. Calvo found Plaintiff had no neurological abnormalities, no loss of dexterity, no disorganized motor function, and no abnormalities of the extremities.   (R. 29.)   Dr. Calvo noted that Plaintiff demonstrated the ability to lift, carry, handle objects, and dress and undress.   (R. 29.)   The ALJ also relied on the testimony of the medical expert from 2013, as well as Plaintiff's testimony, in determining the RFC.   (R. 31.)   Finally, the RFC determination is supported by the ALJ's adverse symptomology finding and evidence underlying it, as discussed previously.   (R. 22;   29–30.)

The foregoing constitutes substantial evidence to support the RFC finding, and it also undermines Plaintiff's claim that the ALJ erred.   Plaintiff's final claim amounts to nothing more than a disagreement with the ALJ's resolution of the evidence.   However, a federal court does not review the evidence de novo, nor does it substitute its own judgment for that of the Commissioner, even if there is record evidence that preponderates against the Commissioner's decision.   *Brown*, 192 F.3d at 496.   A remand pursuant to this third claim is not appropriate.

## V.   CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 10) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 9) be **GRANTED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.   A party may respond to another party's objections within 14 days after being served with a copy thereof.   The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made.   The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of

factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 21st day of January, 2016.

_Dorina Ramos_
Dorina Ramos
UNITED STATES MAGISTRATE JUDGE